# Reed *against* Bias.

In an action of trespass for pulling down a building, evidence that the building was peaceably taken down and its materials preserved in conformity with the directions of the commissioners of the township during a period of great public excitement and disorder, with a view of saving the neighbourhood from threatened violence, is admissible in mitigation of damages.

In such action evidence that the commissioners had by law the power to abate and remove nuisances, and that a grand jury after instructions by a competent court presented the building as a public nuisance and recommended its abatement, is not admissible in mitigation of damages.

ERROR to the District Court for the city and county of *Philadelphia.*

This was an action of trespass *vi et armis,* brought by James J. G. Bias and others against Samuel F. Reed and others for pulling down " the Coloured Temperance Hall of Moyamensing." The defendants pleaded not guilty.

On the trial, after the plaintiffs had proved the destruction of the building by the defendants, the defendants offered to prove, in mitigation of damages, as follows :

1. That the taking down of the Temperance Hall at the time mentioned, was the act of the municipal corporation of Moyamensing township, by their agents duly authorized.

2. That the act was done deliberately by the said municipal corporation at a period of great public excitement and disorder, with a view to save the neighbourhood from threatened violence.

3. That this said municipal corporation had by law the power to abate and remove nuisances, and that a grand jury, after instructions by a competent court, presented the said building or Temperance Hall as a public nuisance, and recommended its abatement.

4. And that the said building was peaceably taken down and its materials preserved in conformity with the direction of the said municipal corporation.

The court rejected the evidence and sealed an exception. This rejection was assigned for error.

*S. F. Reed* and *Dallas,* for the plaintiffs in error.

The property was threatened and fired twice, so that the adjoining property was in danger. The grand jury visited it at the request of the county commissioners, and presented it as a nuisance, and the board of commissioners requested it to be taken down. We admit the board are liable, but not individuals acting under them. But at all events the evidence offered was admissible

to repel vindictive damages, which on the plaintiffs' evidence might possibly be given by the jury. 1 *Binn.* 90 ; 2 *Stark. Ev.* 641.

*C. Gilpin* and *Earle*, contra.

Malice is not the gist of this action : it is only the illegality of the acts done; and the evidence offered did not repel that. If offered in mitigation, it does not tend to that to show that the acts were done by the defendants at the instigation of others. On the contrary, this is an aggravation. If in justification, it should have been so pleaded; and is not admissible under the general issue. 1 *Stark. Ev.* 1121.

The opinion of the Court was delivered by

BURNSIDE, J.—The plaintiffs below brought an action of trespass against the defendants for pulling down the " Temperance Hall of Moyamensing." The hall had been erected under the patronage of the " Moral Reform Society of Philadelphia," by contribution. The building was pulled down in pursuance of orders from the corporation of Moyamensing. There was a riot in progress, and the destruction of this building was believed to be one object of the rioters. Some of the *defendants were officers of the* corporation, and the defendants offered to prove, *in mitigation of damages,* after the plaintiffs had proved the destruction of the building by the defendants, that the building was peaceably taken down and its materials preserved in conformity with the directions of the municipal corporation of Moyamensing, during a period of great public excitement, with a view of saving the neighbourhood from fire and threatened violence. This offer the court rejected ; and this is assigned for error. This court do not approve of the course pursued by this corporation in quelling mobs; yet they think the evidence ought to have been received for the purpose for which it *was offered, in mitigation of damages, but not as a de*fence to the action. It is true, the defendants could not have pleaded the instruction of the corporation in bar to the action ; but it was a circumstance to go to the jury in mitigation, which tended to reduce the damages to the actual loss and injury which the plaintiffs sustained. 2 *Stark. Ev.* 1120. We have an Act of Assembly against *wilfully* firing the woods, making it a criminal offence. It sometimes happens in the mountainous region of Pennsylvania, that there is no other way of arresting the progress of the flames and saving property, but by firing against the fire : although those who fire against the fire are liable for the actual damage they do to the property of others, they certainly might, either on an indictment for a criminal offence or in mitigation of damages, show that the act was not wilful, but induced by the necessity of their situation to protect their property and that of their neighbours from inevitable destruction. Houses are frequently pulled down in towns and cities to arrest the progress of

[Reed v. Bias.]

so terrible an element as fire; and it seems to me, that in an action for the destruction of the building the cause and occasion may be shown in mitigation of damages.

There was another question raised by the counsel of the plaintiffs in error, that the municipal corporation of Moyamensing had a power by law to abate nuisances, and that a grand jury, after instructions by a competent court, presented the said building or Temperance Hall to be a public nuisance. In rejecting this offer the District Court were clearly right. It is due to the court to say that such charge is denied; but this does not change the nature of the offer. In considering the question of evidence, this court must take it for granted the learned counsel could prove their offer. If a grand jury were so lost to themselves as to present a building as a nuisance because a lawless mob contemplated its destruction, and this could be received in evidence even in mitigation of the injury, then miserable would be our situation. We could not imagine whose turn would come next. The mob was the nuisance; not the building. It was the duty of the grand jury to present the mob; and the duty of the sheriff and the civil authority to suppress it. *Dalton* informs us that the sheriff, as his name purports him to be, is the keeper or governor of the county. He is to keep the peace, and hath power to levy *posse comitatus,* so many men as he shall think meet to go with him to apprehend traitors, felons, *rioters,* and the like offenders against the peace. *Dalton* 4; *Co. Litt.* 168. The sheriff is the keeper of the Commonwealth's peace within his bailiwick, by the common law. He may apprehend and commit to prison all persons who break the peace or attempt to break it. He may, and is bound *ex officio,* to pursue and take all traitors and rioters, as well as felons and murderers; and for this purpose, as well as for taking rioters and other breakers of the peace, he may command all the people of his county to attend him, under pain of fine and imprisonment. 2 *Hen.* 5, *c.* 8; *Sewall on Sheriffs* 31.

The sheriff, to prevent personal damage to himself and his ordinary assistants from a mob assembled in extraordinary numbers, and with a show of force to overawe the civil power, may call in the assistance of the military. He has the right, and it is his duty to use the proper and necessary force to suppress all mobs and disturbers of the peace. Without this power our liberty would be but a name, and our lives and property insecure.

Judgment reversed, and a *venire de novo* awarded.